No. 3.—JOHN BOWEN and another, executors of Christopher Bowen, plaintiffs in error, *vs.* JOHN C. JOHNSON, administrator, &c. defendant in error.

[1.] W. executed a power of attorney to B. to sell and convey a certain tract of land for his use : *Held*, that this was a mere agency and within the operation of the Statute of Limitations.

[2.] Account is a head of Equity jurisdiction, but Equity has not therefore jurisdiction of every claim that sounds in account. There must be something upon which the jurisdiction can attach ; something that renders it impossible to take the account at Law, and if possible, which makes the legal remedy inadequate.

In Equity, in Coweta Superior Court. Decision on demurrer, made by Judge HILL. March Term, 1852.

This was a bill for " discovery, account and relief," brought by John C. Johnson, as the administrator of Josiah Woods, against John and Thomas M. Bowen, as executors of Christopher Bowen, deceased, returnable to the September Term, 1850, of Coweta Superior Court.

The bill alleges that in the year 1821, Josiah Woods, of Franklin County, in the State of Virginia, made and executed to Christopher Bowen, then of Oglethorpe County, a power of attorney, to sell, dispose of, and convey, in the name of said Woods, and for his special use, a certain tract of land in the County of Clarke, containing one thousand acres, which had been granted to the said Woods and one Early—it being the tract of land whereon the Town of Watkinsville, in the said County of Clarke, is situated. Under the power of attorney, Bowen went on to sell lots to various persons, executing deeds therefor, running from the year 1821 to 1843, and received the purchase money therefor, amounting in the aggregate to a large sum. The bill alleges that Bowen departed this life in the year 1845, without having accounted to the said Woods for the moneys received by him, in the sale of the land.

Woods died in the year 1849, in the State of Virginia, and

complainant was appointed his administrator, on that part of his estate lying within the limits of the State of Georgia. The bill prayed that the defendants, as the executors of Christopher Bowen, might be decreed to account to the complainant, for the money received by Bowen in his life time, from the sale of the lands of Woods.

To this bill, the defendant filed a demurrer, with specifications, among which was that of the Statute of Limitations.

Upon the hearing of the demurrer, the Court overruled the same, and counsel for defendant excepted, and assigned that decision as error.

E. D. & C. G. McKINLEY, for plaintiffs in error.

SIMS & RAMSEY, for defendants in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The transaction presented in this bill, does not, in our opinion, amount to such a trust as is exempt from the operation of the Statute of Limitations. We consider it a specific agency to sell lands, and no more; and if protected from the limitation Act, it is not perceived why all agencies created by power of attorney, to do certain definite acts, are not equally protected. I need not quote authority to prove that a naked power, limited to the performance of a defined act, is not such a technical trust as belongs exclusively to the Chancery jurisdiction, and therefore free from the Statute bar. The bill discloses that *Bowen* was empowered to sell the lands constituting the site of the town of *Watkinsville,* in *Clarke County,* and to collect the money, and to do nothing else. He by appointment became the attorney of *Woods,* for that purpose, and for nothing else. The whole extent of his authority was to sell and collect; there is indeed, no *trust* created of any kind; he was not authorized to invest the proceeds for the use of the owner, or to do any thing whatever with them, as in the case of *Keaton vs. Greenwood,* decided by this Court, (8 *Geo. R.* 97.) In that case, the

*cestui que trust,* deposited with the trustee a large amount of money and property, to be *used, managed, and invested* for her benefit. He not only was to receive the money and property, but took it to be invested and managed for her use; it was a continuous trust, stretching out for years in its execution; a confidence for management—for investment, was reposed in him. So long as the trust was not repudiated by the defendant, the Statute did not run in his favor, because his possession was consistent with the object and very terms of the trust. Nor does the case referred to by me in *Thomas vs. Brinsfield,* as an illustration of a direct technical trust, and relied upon by counsel for the defendant in error, avail him. I allude to the *Administrators of Allen vs. Woodley,* in 1 *Green's N. J. Reps.* 209. There A created a power of attorney to J W, placing her whole property at the disposal of J W, with full power to collect her choses in action, and to make sale of her goods and chattels, and out of the principal and interest of the proceeds, *to maintain and support her,* with liability to account when required. If here, *Bowen* had been empowered to maintain and support *Woods* out of the proceeds of the sale of the land, with liability to account when required, *then* the cases would have been parallel. The moment he received a dollar for these lands, his obligation was perfect to pay it over, because not authorized to do any thing else with it. To the extent of each sale as it was made, and the money collected, his agency was perfected, and he held the money for the use of *Woods,* and *Woods* could have sued for it at once at Law. If so, with what grace can he (*Woods*) claim that it was a trust, and not subject to the Statute bar. If for the recovery of this money, an action will lie at Law, then it is not a matter of exclusive Equity cognizance, and therefore not a technical trust exempt from the Statute bar; and if an action will lie, and *Woods* failed to sue until barred, he has no right to complain, for he has lost his remedy by his laches. Stress was laid in the argument upon the direction in the power to collect the money *for the use of Woods.* These words do not enlarge the powers of the attorney or vary his liability; they direct no act to be done; without them he would hold the money

to *the use of Woods ; the law* so ordains it ; and *Woods* could have sued him for it in an action for money had and received to his use.

[2.] It was farther urged in the argument, that the complainant asks *an account*, and that *account* is one head of Equity jurisdiction. True, but Equity has not jurisdiction of every claim that sounds in account ; if that were so, then every merchant could go into Equity to collect accounts against his customers. There must be something upon which Equity jurisdiction will attach ; something that will render it impossible to take the account at Law ; or if possible, something that will render the legal remedy imperfect—as insoluble complexity—protracted continuousness with mutuality, or a fraud which the Courts of Law cannot develope—or a defect of evidence, making discovery necessary. 1 *Sch. & Lefr.* 309. 8 *Vesey*, 193. *Mitf. Eq. Pl.* by *Jeremy*, 119, 120. *Story's Eq. Juris.* §§451, 452. 7 *Geo. R.* 206. None of which things exist in this case. The complainant seeks no discovery—he sets out in accurate detail, the sales, with time, parties and price. It is a plain case, and the judgment must be reversed.